UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

STANLEY NORTON, ET AL.

CIVIL ACTION

VERSUS

NO. 13-437-JJB-SCR

LIVINGSTON PARISH DETENTION
CENTER, ET AL.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

This matter is before the court on Defendant Livingston Parish Sheriff Jason Ard's ("Ard") Motion (doc. 7) to Dismiss Pursuant to Rule 12(b)(6) and Defendant Livingston Parish's Motion (doc. 10) to Dismiss Pursuant to Rule 12(b)(6). Subsequent to the filing of the motions, Plaintiffs Stanley Norton and Rhonda Posey ("Plaintiffs") filed a First Amended Complaint (doc. 15), as well as Oppositions (docs. 16 and 23) to the motions to dismiss. Defendant Ard has also filed an Opposition (doc. 24) to Defendant Livingston Parish's Motion to Dismiss. There is no need for oral argument. Jurisdiction is based upon 28 U.S.C. § 1331. For the reasons stated herein, the Court **GRANTS** Defendant Ard's Motion (doc. 7) to Dismiss and **GRANTS** Defendant Livingston Parish's Motion (doc. 10) to Dismiss.

### Background

According to Plaintiffs' First Amended Complaint, Darrin Norton suffered from depression and bipolar disease. (Doc. 15, p. 3, ¶ 29). He had at least one failed suicide attempt and complained of hearing "voices." (Doc. 15, p. 3, ¶ 28). During this time period, he began to live with his father, Stanley Norton. (Doc. 15, p. 4, ¶ 30). After an argument with a neighbor on June 16, 2012, Darrin Norton threw rocks at the neighbor's home, which led to the neighbor calling the police. (Doc. 15 p. 4, ¶¶ 31−32). Upon arrival, a police officer attempted to arrest Darrin Norton, but he began to walk away from the officer. (Doc. 15, p. 4, ¶ 34). After Darrin

1

Norton's refusal to stop, the officer tased him, arrested him, and took him to the Livingston Parish Detention Center. (Doc. 15, p. 4−5, ¶¶ 36−37). During his intake interview, Darrin Norton expressed homicidal and/or suicidal tendencies, and thus, was placed in cell B-3, a cell commonly reserved for inmates who express suicidal and/or homicidal tendencies. (Doc. 15, p. 5, ¶¶ 37−38).

On June 17, 2012, Detention Center deputies allegedly witnessed Darrin Norton eating his own excrement, which prompted Nurse Chaney, an employee of the Livingston Parish Detention Center, to request that Darrin Norton be moved to a padded cell in another part of the Detention Center. (Doc. 15, p. 5, ¶¶ 40−41). It is alleged that Darrin Norton was nude when officers arrived to move him, and he refused to get dressed upon verbal command. (Doc. 15, p. 6, ¶ 42). The responding officers began to taunt him and an altercation ensued. (Doc. 15, p. 6, ¶ 43). During the altercation, the Plaintiffs aver that Darrin Norton was violently taken to the ground by the responding deputies; he had his wrists and ankles handcuffed; he was pinned on the ground with his legs up in what is referred to as a "hogtie" maneuver; he was excessively sprayed with pepper spray in both his face and throat; and he was physically beaten without cause. (Doc. 15, p. 6−7, ¶¶ 45−49). According to the amended complaint, the aforementioned actions caused Darrin Norton to take his last breath, and the officers refused to administer timely and adequate lifesaving procedures in an attempt to revive him. (Doc. 15, p. 7, ¶ 51).

As a result of Darrin Norton's death, his parents, Stanley Norton and Rhonda Posey, individually and as his parents, filed their lawsuit against Livingston Parish Sheriff Jason Ard[1], in his official capacity, and the Parish of Livingston, among numerous others. Plaintiffs allege that Defendants are liable for violating 42 U.S.C. § 1983 by denying Darrin Norton his rights under the Eighth and Fourteenth Amendments. Plaintiffs bring their claims to recover for

---

[1] Jason Ard became the Livingston Parish Sheriff in July 2012, after the incident on June 17, 2012.

Case 3:13-cv-00437-JJB-SCR   Document 30   10/02/13   Page 2 of 14

damages suffered by Darrin Norton prior to his death under Louisiana's "survival action" statute[2] and for their own personal damages under Louisiana's "wrongful death" statute.[3]

## Analysis

1. <u>Defendant Ard's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 7]</u>

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677−78 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the complaint, the court must accept "all well-pleaded facts as true and [view] them in a light most favorable" to the non-moving party. *Kramer v. Bisco*, 470 F. App'x 246, 246 (5th Cir. 2012) (per curiam). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). In order to survive a motion to

---

[2] Louisiana Civil Code article 2315.1
[3] Louisiana Civil Code article 2315.2

Case 3:13-cv-00437-JJB-SCR   Document 30   10/02/13   Page 3 of 14

dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Plaintiffs are suing Defendant Ard under 42 U.S.C. § 1983. "Section 1983 provides a remedy if the deprivation of federal rights takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory,' more commonly known as the 'under color of state law' or 'state action' requirement." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). The Plaintiffs are suing Defendant Ard "in his official capacity" under 42 U.S.C. § 1983, rather than in his individual capacity. "More is required in an official-capacity action, . . . for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

a. *Vicarious Liability Claim*

First and foremost, in the amended complaint, Plaintiffs assert that Defendant Ard, as Sheriff of Livingston Parish, "is vicariously liable for acts or omissions of the deputies who at all times pertinent herein were acting within the course and scope of their employment as deputies of the Sheriff of Livingston." (Doc. 15, p. 26, ¶ 109). Nonetheless, "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability." *Estate of Davis ex rel. McCully v. City of*

4

*North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). *See also Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."). Therefore, any claims for vicarious liability under Section 1983 must fail as they relate to Defendant Ard, in his official capacity.

      b.   *General Municipal Liability Claim*

At the outset, it must be mentioned that Plaintiffs assert all claims against Defendant Ard "in his official capacity." Plaintiffs have not asserted any claims against Defendant Ard in his personal capacity. As the Supreme Court outlined in *Kentucky v. Graham*:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. at 165−66 (citations omitted). "A local government entity may be sued 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121 (1988)) (internal quotation marks omitted). To impose liability upon Defendant Ard, in his official capacity, both parties recognize that the Plaintiffs must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)) (internal quotation marks omitted).

5

Defendant Ard acknowledges that he was the policymaker for the Livingston Parish Sheriff's Office. (Doc. 7-1, p. 9). The real issue is whether Plaintiffs have pleaded sufficient factual allegations regarding an "official policy" to overcome the plausibility standard, and thus, survive the Rule 12(b)(6) motion. An "official policy" is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). In their amended complaint, Plaintiffs allege that:

The Livingston Parish Sheriff, in his official capacity, . . . [was] responsible for decisions concerning staff employment and training, and the preparation, selection and implementation of policies, procedures and guidelines concerning the protection of prisoners from medical, physical, and psychiatric abuse. The Livingston Parish Sheriff, in his official capacity, . . . [was] responsible for the discipline of staff whose negligence or misconduct contributed to an inmate's physical or mental mistreatment, or death; ensuring custody staff received mental health training, and in ensuring adequate mental and medical staffing at Livingston Parish Detention Center and within the Livingston Parish Sheriff's Office. The Livingston Parish Sheriff, in his official capacity, . . . [was] also responsible for the conduct of the employees and contractors at Livingston Parish Detention Center and within the Livingston Parish Sheriff's Office, including deputies, guards, custodial and medical staff. The decisions made regarding policies for the protection of inmate physical safety, and the medical and psychiatric policies by the Livingston Parish Sheriff, in his official capacity, . . . directly affected Darrin Norton's ability to be safe from physical abuse, and medical and psychiatric indifference and abuse.

(Doc. 15, p. 11, ¶ 66). Moreover, Plaintiffs allege that Defendant Ard, in his official capacity, "showed deliberate indifference, in [his] implementation of policies and procedures regarding the treatment of . . . Darrin Norton and deprived Darrin Norton minimal civilized measures of life's

Case 3:13-cv-00437-JJB-SCR   Document 30   10/02/13   Page 6 of 14

necessities, and deprived Darrin Norton of basic human needs while incarcerated at the Livingston Parish Detention Center." (Doc. 15, p. 15, ¶ 75). As further support for their claims, Plaintiffs provide that Defendant Ard, in his official capacity as Livingston Parish Sheriff, was "directly related and had direct oversight in the official custom, policy, and procedure related to hiring or training of the deputies and/or employees of the Livingston Parish Sheriff's Office and Livingston Parish Detention Center," and "[t]he official custom, policy, and procedure related to hiring or training of these individuals resulted in the death of Darrin Norton." (Doc. 15, p. 15−16, ¶ 76). Plaintiffs go on to claim that Defendant Ard, in his official capacity, was "personally involved in the implementation of policy at the Livingston Parish Detention Center regarding the treatment of inmates and the extraction of inmates from cells" and "[t]he policy was so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violations to Darrin Norton and resulted in the death of Darrin Norton." (Doc. 15, p. 16, ¶ 77). Plaintiffs provide that at all times, all defendants, including Defendant Ard, in his official capacity, "separately and in concert, acted under color of state law" and "separately and in concert, acted outside the scope of his/her jurisdiction and without authorization of law, willfully and knowingly, to deprive Darrin Norton of his right to freedom from cruel and unusual punishment and from state-occasioned harm, injury, damage to bodily integrity and death." (Doc. 15, p. 17, ¶ 82).

Nonetheless, Plaintiffs fail to provide factual allegations regarding any "official policy" which would potentially subject Defendant Ard, in his official capacity, to liability under 42 U.S.C. § 1983. An "official policy" can either be an officially-adopted policy statement, ordinance, regulation or decision; or a widespread practice that is so common as to constitute a custom. *See Webster*, 735 F.2d at 841. However, Plaintiffs provide the conclusory allegation that

Case 3:13-cv-00437-JJB-SCR   Document 30   10/02/13   Page 7 of 14

Defendant Ard, in his official capacity, "showed deliberate indifference, in [his] implementation of policies and procedures regarding the treatment of . . . Darrin Norton and deprived Darrin Norton minimal civilized measures of life's necessities." (Doc. 15, p. 15, ¶ 75). There are no factual allegations as to what this alleged policy was or what it involved. Plaintiffs also aver that "decisions made regarding policies for the protection of inmate physical safety, and the medical and psychiatric policies by the Livingston Parish Sheriff, in his official capacity, . . . directly affected Darrin Norton's ability to be safe from physical abuse, and medical and psychiatric indifference and abuse." (Doc. 15, p. 11, ¶ 66). Again, there is no factual allegation as to what these policies and procedures were, and whether or not they constituted an "official policy" so as to hold Defendant Ard liable in his official capacity. Throughout the rest of the amended complaint, Plaintiffs simply refer to the "policy" and "custom" at the Livingston Parish Detention Center, yet, never make a single factual allegation as to what that custom or policy entailed. Emblematic of the overall problem, Plaintiffs make the conclusory statement in their amended complaint that "[t]he policy was so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violations to Darrin Norton and resulted in the death of Darrin Norton" and "[t]he official custom, policy, and procedure related to hiring or training of these individuals resulted in the death of Darrin Norton." (Doc. 15, p. 15−16, ¶¶ 76−77). This is a situation where Plaintiffs are merely making conclusory allegations that effectively amount to a formulaic recitation of the elements of their 42 U.S.C. § 1983 cause of action. *See Twombly*, 550 U.S. at 555.

Plaintiffs do plead that "[d]efendants . . . failed to implement a system of care for mentally handicapped persons which would ensure that orders be followed in a safe manner, and failed to take necessary precautions to prevent the death of Darrin Norton." (Doc. 15, p. 18−19,

¶¶ 86−87). However, with respect to this allegation, it must be emphasized that in the immediately preceding paragraph, Plaintiffs allege that "Livingston Parish Detention Center and Livingston Parish Sheriff's Office policies and procedures, require that inmates with medical or mental health needs be diagnosed and provided necessary and adequate mental health services and/or medical attention." (Doc. 15, p. 18, ¶ 86). Thus, according to Plaintiffs' own allegations, the official policy of the Livingston Parish Sheriff's Office with regard to inmates with medical or mental health needs did not violate Darrin Norton's Eighth or Fourteenth Amendment rights, as it required individuals like Darrin Norton to be diagnosed and provided necessary and adequate medical services and attention. As a result, this allegation does not suffice to establish a municipal liability claim against Defendant Ard in this official-capacity suit.

District courts in this circuit and other circuits have found similar allegations insufficient to overcome a Rule 12(b)(6) Motion to Dismiss. In *Lee v. O'Malley*, the United States District Court for the District of Maryland found that the statement "said arrests are a matter of policy, tradition and custom within the Baltimore City Police Department" was conclusory and "insufficient to support any claim that Plaintiff's arrest was the result of some custom or policy." 533 F. Supp. 2d 548, 553 (D. Md. 2007). Similarly, in *Brown v. City of New York*, the United States District Court for the Southern District of New York found the broad, conclusory allegations of the plaintiff insufficient to sustain a Section 1983 claim and provided the following:

> [Plaintiff's] complaint describes in general, conclusory terms that the City negligently hired, trained and supervised its police officers, and failed to investigate their backgrounds. Beyond the broad allegations of his pleadings, [Plaintiff] presents no evidentiary support for the existence of such a municipal policy, custom or practice, nor any indication of how any such City conduct resulted in the harms [Plaintiff] suffered in connection with his arrest and prosecution. The existence of a municipal policy or practice entailing deprivations

> of constitutional rights cannot be grounded solely on the conclusory assertions of the plaintiff.

306 F. Supp. 2d 473, 477−78 (S.D.N.Y. 2004). Furthermore, the United States District Court for the Eastern District of Louisiana previously found that the plaintiff's conclusory allegations of a custom were insufficient to overcome a Rule 12(b)(6) motion to dismiss. *See Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898 (E.D. La. 2001). In that case, the Eastern District stated:

> With respect to the bond, plaintiff alleges that the failure to honor such bond was "in accordance with the official policy of the Tangipahoa Parish Sheriff's Department." This allegation fails for several reasons. At the most basic level of analysis, plaintiff does not allege specific facts. The complaint states that the deprivation of rights was "in accordance with the official policy of the Sheriff's Department"; however, this bald assertion need not be accepted by the Court.

*Id.* at 906−07 (citations omitted).

In this case, Plaintiffs have attempted to utilize conclusory statements to establish their Section 1983 municipal liability claim, without actually providing the factual allegations necessary to support the claim. Plaintiffs rely on legal conclusions and conclusory allegations in hopes of providing sufficient information to overcome a Rule 12(b)(6) motion. Nevertheless, the Plaintiffs' conclusory allegations do not satisfy the plausibility standard under *Twombly* and *Iqbal*, and therefore, the amended complaint as it presently stands is not sufficient to overcome a Rule 12(b)(6) motion to dismiss as related to the Section 1983 municipal liability claim.

c. *Failure to Train or Supervise Claim*

Nevertheless, as a separate theory of liability, Plaintiffs contend that Defendant Ard, in his official capacity, should be liable for an alleged failure to train or supervise the deputies at the Livingston Parish Detention Center. An official can be liable under Section 1983 for failure to train or supervise. *See Zarnow*, 614 F.3d at 170−71. "A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the

sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiffs allege that Defendant Ard "failed to properly train and supervise Livingston Parish Detention Center staff and deputies regarding . . . policies and procedures, and state and federal statutory duties to provide inmates with necessary and appropriate medical and mental health services and to respond to prisoners' apparent immediate needs for mental treatment." (Doc. 15, p. 20−21, ¶ 92). Furthermore, in the amended complaint, Plaintiffs aver that Defendant Ard, and other defendants:

> [N]egligently and carelessly trained and supervised the personnel of Livingston Parish Detention Center and the Deputies of Livingston Parish Sheriff's Office in policies, procedures and other methods of providing inmates with necessary and appropriate mental health services. These defendants knew or in the exercise of reasonable care should have known that the failure to train and supervise, and/or negligent training and supervision, were likely to cause injury and/or death to prisoners incarcerated at the Livingston Parish Detention Center. The above-named defendants failed to properly train, monitor or supervise staff in the policies and procedures for providing necessary mental health services to inmates, and the necessary precautions to circumvent possible physical danger to inmates suffering mental disabilities while in their care. This lack of adequate training, monitoring, and supervision was the legal and actual cause of the death of Darrin Norton. The failure of defendants to provide training and supervision regarding the statutory and constitutional duties to provide safe custody for inmates entrusted to their care, and to provide necessary and adequate mental health services and to provide training and supervision related to the handling of prisoners with mental disabilites [sic] amounts to gross negligence and a deliberate indifference to the safety and lives of inmates. This gross negligence was a proximate cause of the death of Darrin Norton.

(Doc. 15, p. 21−22, ¶ 94). The same arguments and statements are used with respect to the alleged failure to train or supervise employees "regarding the extraction of inmates, inmate

Case 3:13-cv-00437-JJB-SCR   Document 30   10/02/13   Page 11 of 14

securement, restraint of inmates and use of force on inmates." (Doc. 15, p. 21, ¶ 93; Doc. 15, p. 22, ¶ 95). Moreover, Plaintiffs allege that Defendant Ard, as well as other named defendants:

> [H]ad the power and authority to discharge or reassign sworn personnel of Livingston Parish Detention Center and Livingston Parish Sheriff's Office who were or were believed to be emotionally unstable, inadequately trained or experienced, untrustworthy, and prone to disregard his/her duty to protect the safety of those inmates entrusted to his/her care, or to provide necessary and adequate mental, or medical health care services which were in accordance with the sound principles of practice, or otherwise exhibited tendencies, traits of character, behavior, habits, conduct or attitudes which rendered such sworn personnel unfit or undesirable for the positions of correctional officers and deputies for assignment to duties involving contact with the inmate population sentenced to imprisonment in Livingston Parish Detention Center. In spite of this knowledge and responsibility, the administrative and supervisory defendants negligently and carelessly employed, assigned, and retained Livingston Parish Detention Center employees and Livingston Parish Sheriff's Office deputies and negligently and carelessly failed to properly supervise, assign, and discipline Livingston Parish Detention Center employees and Livingston Parish Sheriff's Office deputies. The acts and omissions of the above-named defendants were malicious, fraudulent and oppressive, with the wrongful intention of injuring plaintiffs, with an improper and evil motive amounting to malice, and in conscious disregard for their well-being.

(Doc. 15, p. 23−24, ¶ 96). Finally, Plaintiffs allege that "[t]he acts and omissions by all defendants as to Darrin Norton were malicious, fraudulent and oppressive, and were committed with the wrongful intention of injuring and/or killing Darrin Norton, from an improper and evil motive amounting to malice, and in conscious disregard of his rights." (Doc. 15, p. 24, ¶ 97).

Similar to the allegations in *Iqbal*, "[t]hese bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements'" of a Section 1983 failure to train or supervise claim. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). "As such, the allegations are conclusory and not entitled to be assumed true." *Id.* Plaintiffs have failed to provide any factual allegations to support their legal conclusion that the training was negligent, careless, and improper; there are only the bare, conclusory allegations that are mentioned above. Accordingly, Plaintiffs have failed to plead sufficient factual allegations to satisfy the "plausibility standard,"

and thus, have failed to survive a Rule 12(b)(6) motion to dismiss with regard to the Section 1983 "failure to train or supervise" claim.

2. Livingston Parish's Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) [Doc. 10]

Plaintiffs also bring claims against the Parish of Livingston pursuant to 42 U.S.C. § 1983. "[M]unicipalities are 'persons' subject to suit under 42 U.S.C. § 1983." *Milam v. City of San Antonio*, 113 F. App'x 622, 625 (5th Cir. 2004) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)). Nevertheless, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Therefore, Defendant Livingston Parish cannot be held vicariously liable under Section 1983 solely for the alleged acts or omissions of its employee Nurse Courtney Chaney.

But, Livingston Parish can be sued under Section 1983 for municipal liability "if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Praprotnik,* 485 U.S. at 121. As aforementioned, the three requirements to impose municipal liability are: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow*, 614 F.3d at 166 (quoting *Piotrowski*, 237 F.3d at 578) (internal quotation marks omitted). As was the case with the municipal liability claim against Defendant Ard, the Section 1983 claims against Defendant Livingston Parish suffer from the same deficiencies, because Plaintiffs rely on conclusory statements, rather than providing factual allegations regarding an alleged "official policy" of the Parish of Livingston. Accordingly, the Section 1983 claims that attempt to hold the Parish of Livingston liable for the alleged

Case 3:13-cv-00437-JJB-SCR   Document 30   10/02/13   Page 13 of 14

deprivation of Darrin Norton's Eighth and Fourteenth Amendment rights must be dismissed due to a failure to satisfy the "plausibility standard" necessary to overcome a Rule 12(b)(6) motion.

### Conclusion

Therefore, Defendant Livingston Parish Sheriff Jason Ard's Motion (doc. 7) to Dismiss Pursuant to Rule 12(b)(6) is **GRANTED**, with leave to amend. Defendant Livingston Parish's Motion (doc. 10) to Dismiss Pursuant to Rule 12(b)(6) is also **GRANTED**, with leave to amend. Plaintiffs are **ORDERED**, if they decide to proceed, to file a Second Amended Complaint remedying the deficiencies within 21 days of the date of this Ruling.

Signed in Baton Rouge, Louisiana, on October 2, 2013.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

14